**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| TRI-DAM, | ) | 1:11-cv-01301-AWI-SMS |
| | ) | |
| Plaintiff, | ) | ORDER RE: MOTIONS FOR |
| | ) | SUMMARY JUDGMENT |
| v. | ) | |
| | ) | (Docs. 21, 29) |
| RANDALL YICK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I. INTRODUCTION**

Plaintiff Tri-Dam ("Plaintiff" or "Tri-Dam") and defendant Randall Yick ("Defendant" or "Yick") have filed competing motions for summary judgment. For reasons discussed below, the Court shall deny both motions and set a briefing schedule for a second round of summary judgment proceedings.

**II. FACTS AND PROCEDURAL BACKGROUND**

The facts of this case are undisputed. Tulloch Reservoir, more commonly known as Lake Tulloch, is a man-made reservoir located near the city of Copperopolis, California. It is part of Hydroelectric Project No. 2067, known as the Tulloch Project. The Tulloch Project, a water supply/power project

constructed in the 1950s, is located along the Stanislaus River, mostly on private land in Tuolumne and Calaveras Counties. The Tulloch Project includes Tulloch Dam and Reservoir, Tulloch Penstock, Tulloch Powerhouse and Tulloch Switchyard. New Melones Reservoir, a part of the U.S. Bureau of Reclamation's Central Valley Project, discharges directly into Tulloch Reservoir. Downstream of Tulloch Reservoir is Goodwin Dam, a diversion dam by which the Oakdale Irrigation District, South San Joaquin Irrigation District and Stock East Water District divert water to their respective districts. The reservoir has a normal maximum water surface elevation of 510 feet.

Tri-Dam, a cooperative venture of the Oakdale and South San Joaquin Irrigation Districts, owns and operates the Tulloch Project under a license issued by the Federal Energy Regulatory Commission (FERC). FERC requires each licensee obtain control over all lands needed for the operation and maintenance of a hydroelectric project and other project purposes, such as flowage, shoreline control and protection of environmental resources. Tri-Dam received an initial license from FERC's predecessor to construct and operate the Tulloch Project effective January 1, 1955, for a term ending December 31, 2004. Article 39 of this license gave Tri-Dam permission, with prior approval of FERC, for use of lands within the area defined as the "FERC Project Boundary." For the Tulloch Project, this boundary encompasses an area of approximately 1,619 acres and includes all land within a 515-feet elevation contour (five feet above the normal maximum water surface elevation) surrounding Tulloch Reservoir. Sixty-one percent of land within the FERC Project Boundary is privately owned, twenty-six percent of the land is owned by the Oakdale and South San Joaquin Irrigation Districts and twelve percent is owned either by the state or federal governments.

In 1993, Randall Yick purchased the real property at 6204 Bluffview Court in the Connor Estates development of Copperopolis (95228), originally described as Lot 49 of Connor Estates, Tract 479, Phase I, according to the official map filed for record on March 26, 1992, in Book 6, page 67 of the Subdivision Maps of the Calaveras County Records. Lot 49 is located on the waterfront of Tulloch Reservoir. At the time of Yick's purchase, the lot included a T-shaped floating dock that protruded partially into neighboring Lot 48, which was not (and has never been) owned by Yick. In

1994 the developer installed a ramp between the seawall leading to the dock and the dock itself, extending the dock further into Tulloch Reservoir and Lot 48. The dock is below the 515-feet elevation contour surrounding Tulloch Reservoir and therefore within the FERC Project Boundary.

Lot 48 was purchased by Dennis and Elizabeth Moody, who sold the lot to Susan Larson (née Servidio) in 2002. Yick eventually brought an action against Larson in California superior court claiming adverse possession and prescriptive and implied easements to the portion of Lot 48 over which his dock was positioned. *Yick v. Larson,* 2010 WL 19696 (Cal.App. 3 Dist. 2010) (unpublished), at *1. Following a bench trial, the superior court found against Yick on the adverse possession and prescriptive easement claims, but awarded Yick an implied easement to Lot 48. However, the court restricted the easement to the area underlying the dock when it was attached to the seawall and not as extended by the ramp. The court further refused to enjoin Larson's use of her own dock, as Yick requested, concluding Yick failed to prove Larson's dock interfered with the use of his dock. *Id.* at *2. Yick appealed and the Third District Court of Appeal affirmed. *Id*. at *2-*9.

In 2002, Tri-Dam developed Tulloch Reservoir's most current Shoreline Management Plan ("SMP") in anticipation of obtaining a new license for the Tulloch Project. Observing the FERC license required Tri-Dam to obtain FERC approval for (1) actions that would in any way reduce the storage capacity of Tulloch Reservoir and (2) use of lands within the FERC Project Boundary, the SMP recognized there was considerable public interest for development of the Tulloch Reservoir shoreline and that some of this development could conceivably have only minor impacts on reservoir storage or project operations. Accordingly, the SMP expressed Tri-Dam's need to approach FERC for general approval of minor development activities to facilitate such activities within the Project Boundary and avoid the need to obtain FERC approval for every individual development activity.

The SMP described the minor development activities for which Tri-Dam had requested FERC's approval. These activities encompassed, as relevant here, a "private facilities program," which provided in pertinent part that (1) all parties desiring to construct, expand or rebuild a private single family facility (including dock structures) within the FERC Project Boundary must obtain

3

authorization from Tri-Dam prior to the initiation of excavation or construction and (2) all facilities must be constructed on the party's deeded waterfront lot for the purpose of providing private access for occupants of single family-type dwellings. The SMP also outlined an "encroachment" permitting scheme through which parties could apply for – and Tri-Dam would issue – permits authorizing a particular use or facility within the FERC Project Boundary. According to the SMP, all proposed development activities are subject to the requirement of obtaining an encroachment permit from Tri-Dam, and as a condition of obtaining an encroachment permit, facilities, including private facilities, must be fully contained within an applicant's property lines and may not cross private property lines.

On December 23, 2002, Tri-Dam filed an application with FERC for a new license, pursuant to sections 4(e) and 15 of the Federal Power Act (FPA, 16 U.S.C §§ 791 et seq.), to continue operation and maintenance of the Tulloch Project; the SMP was included as an exhibit to the new license application. On February 16, 2006, FERC issued a new license to Tri-Dam for a period of 39 years, 11 months subject to the terms and conditions of the FPA, which was incorporated into the license by reference. (Between 2004 and 2006, Tri-Dam operated the Tulloch Project under an annual license pending the disposition of its new license application.) Article 411 of this license approves the SMP. Article 413 gives Tri-Dam the authority to grant permission for certain uses and occupancies of project lands and waters, including non-commercial piers, landings and boat docks, without prior FERC approval, and continuing responsibility to supervise and control the uses and occupancies for which it grants permission. If a permitted use or occupancy violates any condition imposed by the license or by Tri-Dam, article 413 further gives Tri-Dam authority to take any lawful action necessary to correct the violation, including canceling the permission to use and occupy the project lands and waters and requiring the removal of any non-complying structures and facilities.

Tri-Dam filed this action against Yick on August 5, 2011. On September 9, 2011, Tri-Dam filed its first amended complaint against Yick for violations of the FPA, FERC regulations and the SMP, seeking a permanent injunction prohibiting Yick from installing, possessing, or maintaining property within the Tri-Dam Project Boundary (1) without seeking prior approval and obtaining a

permit from Tri-Dam and (2) that is not in compliance with a permit obtained from Tri-Dam. Tri-Dam also sought an injunction requiring Yick to submit plans to Tri-Dam for removal of property installed without approval of Tri-Dam. On December 7, 2012, Tri-Dam and Yick filed competing motions for summary judgments. On January 8, 2013, Tri-Dam filed its opposition to Yick's motion for summary judgment. Yick did not file an opposition to Tri-Dam's motion for summary judgment.

### III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538. A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the motion is unopposed, the movant is not absolved of the burden to show there are no genuine issues of material fact, *Henry v. Gill Industries,*

*Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993), although the court may assume the movant's assertions of fact to be undisputed for the purposes of the motion and grant summary judgment if the facts and other supporting materials show the movant is entitled to it. *See* Fed. R. Civ. P. 56(e)(2), (3).

## IV. DISCUSSION

*A. Tri-Dam's motion for summary judgment* – As the basis for summary judgment, Tri-Dam first contends that because Yick's dock is below the 515-feet elevation contour and thus within the FERC Project Boundary, it is subject to the requirements of the SMP. Tri-Dam further contends Yick was required to obtain a permit for the dock under the SMP's encroachment permitting scheme, but that he never applied for a permit and would not have received one even if he had because the dock extends into property not owned by Yick and therefore does not comply with the condition that all private facilities be fully contained within an applicant's property and not cross private property lines. From this, Tri-Dam contends it has authority under article 413 of the FERC License to order Yick to remove and/or relocate his dock. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds Tri-Dam has failed to satisfy its initial burden.

The FPA authorizes FERC "[t]o issue licenses to citizens of the United States, or to any association of such citizens, or to any corporation organized under the laws of the United States or any State thereof, or to any State or municipality for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission, and utilization of power[.]" 16 U.S.C. § 797(e). As a condition of obtaining a license, a proposed project "shall be such as in the judgment of [FERC] will be best adapted to a comprehensive plan for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development . . . and for other beneficial public uses[.]" *Id.*, § 803(a)(1). "Thus, FERC retains 'the

obligation to insure that any uses of the [project] will be consistent with the beneficial public purposes for which a license has been issued.' [Citation.] Consistent with this obligation, FERC may authorize a licensee to permit project property use for non-project purposes . . . . [Citation.]" *VA Timberline, LLC v. Appalachian Power Co.,* 2008 WL 269544 (W.D.Va. 2008) (unpublished), *4.

Articles 411 and 413 of Tri-Dam's FERC license essentially permit Tri-Dam to regulate certain uses and occupancies of land in the FERC Project Boundary without prior FERC approval, in accordance with the provisions of the SMP. However, the license merely gives Tri-Dam *authority* to do so; it does not give Tri-Dam the *right* to do so. Article 5 of license provides in pertinent part, "The Licensee, within five years from the date of issuance of the license, *shall acquire title in fee or the right to use in perpetuity all lands*, other than lands of the United States, necessary or appropriate for construction[,] maintenance and operation of the project." (Emphasis added.) In other words, Tri-Dam must still have obtained independent control – through flowage rights, easement deeds or fee simple ownership – of land needed to operate and maintain Tulloch Project.

According to the SMP, Tri-Dam acquired property rights to the FERC Project Boundary by obtaining flowage easements for all of the land within the boundary. These easements purportedly allow Tri-Dam to overflow, flood and cover said land with the water created by the construction and operation of Tulloch Dam; enter upon the land to clear, destroy or dispose of timber or other natural growth and any obstruction, accumulation or trash that would interfere with the use of Tulloch Reservoir or render the reservoir unsafe or unsanitary; and grant the right of ingress to and egress from said land for any of the above purposes – in effect, allowing Tri-Dam to use the land for purposes authorized by the FERC license. Problematically for Tri-Dam, no evidence of any recorded easements has been provided to the Court. The only "evidence" that easements even exist comes from statements in the SMP, which is purely hearsay. Under these circumstances, Tri-Dam cannot show it obtained sufficient property rights to regulate any of the area within the FERC Project Boundary, let alone the area encompassing Lots 48 and 49. Therefore, even assuming Yick's dock violated the terms of the SMP and Tri-Dam's FERC license in a manner sufficient to establish the

irreparable injury needed to underlie Tri-Dam's prayer for a permanent injunction (an issue the Court need not reach here), summary judgment cannot be granted in favor of Tri-Dam.

***B. Yick's motion for summary judgment*** – Yick concedes he has not applied for a permit for his dock, and further concedes the dock is not fully contained within his property but rather crosses private property lines. Nevertheless, in moving for summary judgment, Yick essentially suggests the implied easement granted to him by the trial court in *Yick v. Larson* confers upon him a property right to Lot 48 that is superior to any easement Tri-Dam might possess to control flowage over the same property. Having reviewed the pleadings of record and all competent and admissible evidence, the Court agrees this case will more than likely involve a resolution of conflicts between competing easements. Whether Yick's easement is superior or subordinate to Tri-Dam's purported easements under the law of easements is an issue the Court cannot reach absent evidence of valid recorded easements from Tri-Dam. Accordingly, summary judgment in favor of Yick shall also be denied.

## V. DISPOSITION

Based on the foregoing, Tri-Dam's motion for summary judgment and Yick's motion for summary judgment are both DENIED.

The Court shall reopen the time to file dispositive motions for the limited purpose of conducting a second round of summary judgment proceedings only as to the issue of easements. The parties shall file a second motion for summary judgment on or before 4:00 p.m. on Friday, March 29, 2013. Oppositions may be filed by 4:00 p.m. on Friday, April 12, 2013, and replies may be filed by 4:00 p.m. on Friday, April 19, 2013. Oral arguments shall be set for hearing on Monday, April 29, 2013 at 1:30 p.m. in Courtroom 2.

In particular, the parties are urged to address the following: (1) whether the superior court's grant of an implied easement to Yick over a portion of Lot 48 does or does not collaterally estop Tri-Dam from asserting rights to the same property; (2) the practical effect of the conflict between the parties' easements; and (3) how such conflict, if any, should be resolved. The parties are, of course, encouraged to brief any easement-related sub-issues they deem appropriate.

All future dates are hereby VACATED.

IT IS SO ORDERED.

Dated:   February 26, 2013

SENIOR DISTRICT JUDGE