IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRI-DAM,<br><br>        Plaintiff,<br><br>    v.<br><br>RANDAL YICK,<br><br>        Defendant. | 1:11–CV–01301–AWI–SMS<br><br>**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**<br><br>(DOCS. 36, 38) |

## I.      INTRODUCTION

Plaintiff Tri-Dam ("Tri-Dam") and defendant Randal Yick (erroneously sued as Randall Yick) ("Yick") have filed competing motions for summary judgment. For reasons discussed below, both Tri-Dam's and Yick's motions shall be denied.

## II.      FACTS AND PROCEDURAL BACKGROUND

The facts of this case are undisputed. Tulloch Reservoir, more commonly known as Lake Tulloch, is a man-made reservoir located near the city of Copperopolis, California. It is part of Hydroelectric Project No. 2067, known as the Tulloch Project. The Tulloch Project, a water

supply/power project constructed in the 1950s, is located along the Stanislaus River, mostly on private land in Tuolumne and Calaveras Counties. The Tulloch Project includes Tulloch Dam and Reservoir, Tulloch Penstock, Tulloch Powerhouse and Tulloch Switchyard. New Melones Reservoir, a part of the U.S. Bureau of Reclamation's Central Valley Project, discharges directly into Tulloch Reservoir. Downstream of Tulloch Reservoir is Goodwin Dam, a diversion dam by which the Oakdale Irrigation District, South San Joaquin Irrigation District and Stock East Water District divert water to their respective districts. The reservoir has a normal maximum water surface elevation of 510 feet.

Tri-Dam, a cooperative venture of the Oakdale and South San Joaquin Irrigation Districts, owns and operates the Tulloch Project under a license issued by the Federal Energy Regulatory Commission (FERC). FERC requires each licensee to obtain control over all lands needed for the operation and maintenance of a hydroelectric project and other project purposes, such as flowage, shoreline control and protection of environmental resources. Tri-Dam received an initial license from FERC's predecessor to construct and operate the Tulloch Project effective January 1, 1955, for a term ending December 31, 2004. Article 39 of this license gave Tri-Dam permission, with prior approval of FERC, for use of lands within the area defined as the "FERC Project Boundary." For the Tulloch Project, this boundary encompasses an area of approximately 1,619 acres and includes all land within a 515-feet elevation contour (five feet above the normal maximum water surface elevation) surrounding Tulloch Reservoir. Sixty-one percent of land within the FERC Project Boundary is privately owned, twenty-six percent of the land is owned by the Oakdale and South San Joaquin Irrigation Districts and twelve percent is owned either by the state or federal governments.

In 1993, Randal Yick purchased the real property at 6204 Bluffview Court in the Connor Estates development of Copperopolis (95228), originally described as Lot 49 of Connor Estates, Tract 479, Phase I, according to the official map filed for record on March 26, 1992, in Book 6, page 67 of the Subdivision Maps of the Calaveras County Records. Lot 49 is located on the waterfront of Tulloch Reservoir. At the time of Yick's purchase, the lot included a T-shaped floating dock that protruded partially into neighboring Lot 48, which was not (and has never

been) owned by Yick. In 1994 the developer installed a ramp between the seawall leading to the dock and the dock itself, extending the dock further into Tulloch Reservoir and Lot 48. The dock is below the 515-feet elevation contour surrounding Tulloch Reservoir and therefore within the FERC Project Boundary.

Lot 48 was purchased by Dennis and Elizabeth Moody, who sold the lot to Susan Larson (née Servidio) in 2002. Yick eventually brought an action against Larson in California superior court claiming adverse possession and prescriptive and implied easements to the portion of Lot 48 over which his dock was positioned. *Yick v. Larson,* 2010 WL 19696 (Cal.App. 3 Dist. 2010) (unpublished), at *1. Following a bench trial, the superior court found against Yick on the adverse possession and prescriptive easement claims, but awarded Yick an implied easement to Lot 48. However, the court restricted the easement to the area underlying the dock when it was attached to the seawall and not as extended by the ramp. The court further refused to enjoin Larson's use of her own dock, as Yick requested, concluding Yick failed to prove Larson's dock interfered with the use of his dock. *Id.* at *2. Yick appealed and the Third District Court of Appeal affirmed. *Id*. at *2-*9.

In 2002, Tri-Dam developed Tulloch Reservoir's most current Shoreline Management Plan ("SMP") in anticipation of obtaining a new license for the Tulloch Project. Observing the FERC license required Tri-Dam to obtain FERC approval for (1) actions that would in any way reduce the storage capacity of Tulloch Reservoir and (2) use of lands within the FERC Project Boundary, the SMP recognized there was considerable public interest for development of the Tulloch Reservoir shoreline and that some of this development could conceivably have only minor impacts on reservoir storage or project operations. Accordingly, the SMP expressed Tri-Dam's need to approach FERC for general approval of minor development activities to facilitate such activities within the Project Boundary and avoid the need to obtain FERC approval for every individual development activity.

The SMP described the minor development activities for which Tri-Dam had requested FERC's approval. These activities encompassed, as relevant here, a "private facilities program," which provided in pertinent part that (1) all parties desiring to construct, expand or rebuild a

private single family facility (including dock structures) within the FERC Project Boundary must obtain authorization from Tri-Dam prior to the initiation of excavation or construction and (2) all facilities must be constructed on the party's deeded waterfront lot for the purpose of providing private access for occupants of single family-type dwellings. The SMP also outlined an "encroachment" permitting scheme through which parties could apply for – and Tri-Dam would issue – permits authorizing a particular use or facility within the FERC Project Boundary. According to the SMP, all proposed development activities are subject to the requirement of obtaining an encroachment permit from Tri- Dam, and as a condition of obtaining an encroachment permit, facilities, including private facilities, must be fully contained within an applicant's property lines and may not cross private property lines.

On December 23, 2002, Tri-Dam filed an application with FERC for a new license, pursuant to sections 4(e) and 15 of the Federal Power Act (FPA, 16 U.S.C §§ 791 et seq.), to continue operation and maintenance of the Tulloch Project; the SMP was included as an exhibit to the new license application. On February 16, 2006, FERC issued a new license to Tri-Dam for a period of 39 years, 11 months subject to the terms and conditions of the FPA, which was incorporated into the license by reference. (Between 2004 and 2006, Tri-Dam operated the Tulloch Project under an annual license pending the disposition of its new license application.) Article 411 of this license approves the SMP. Article 413 gives Tri-Dam the authority to grant permission for certain uses and occupancies of project lands and waters, including non-commercial piers, landings and boat docks, without prior FERC approval, and continuing responsibility to supervise and control the uses and occupancies for which it grants permission. If a permitted use or occupancy violates any condition imposed by the license or by Tri-Dam, article 413 further gives Tri-Dam authority to take any lawful action necessary to correct the violation, including canceling the permission to use and occupy the project lands and waters and requiring the removal of any non-complying structures and facilities.

Tri-Dam filed this action against Yick on August 5, 2011. On September 9, 2011, Tri-Dam filed its first amended complaint against Yick for violations of the FPA, FERC regulations and the SMP, seeking a permanent injunction prohibiting Yick from installing, possessing, or

maintaining property within the Tri-Dam Project Boundary (1) without seeking prior approval and obtaining a permit from Tri-Dam and (2) that is not in compliance with a permit obtained from Tri-Dam. Tri-Dam also sought an injunction requiring Yick to submit plans to Tri-Dam for removal of property installed without approval of Tri-Dam. On December 7, 2012, Tri-Dam and Yick filed competing motions for summary judgments. On January 8, 2013, Tri-Dam filed its opposition to Yick's motion for summary judgment. Yick did not file an opposition to Tri-Dam's motion for summary judgment.

On February 26, 2013, this Court denied both motions for summary judgment but allowed the parties to file a second motion for summary judgment, requesting further briefing on issues including whether the superior court's grant of an implied easement to Yick over a portion of Lot 48 does or does no collaterally estop Tri-Dam from asserting rights to the same property, the effect of the parties' conflicting easements, and how the conflict, if any should be resolved. On March 24, 2013, Yick filed a second motion for summary judgment, and on March 29, 2013 Tri-Dam filed a second motion for summary judgment along with a request for judicial notice. Yick filed an opposition to Tri-Dam's second motion on April 5, 2013. Tri-Dam filed an opposition to Yick's second motion on April 12, 2013. Yick replied to Tri-Dam's opposition on April 16, 2013. On April 19, 2013 Tri-Dam replied to Yick's opposition.

### III.     LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538. A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV.   DISCUSSION

Tri-Dam has filed suit in federal court. However, the court will apply California state property law to the issues presented. "[F]ederal courts, as a general rule, follow state law rather than federal law in resolving real property disputes." <u>Cortese v. US</u>, 782 F. 2d 845, 849 (9th Cir. 1986). State law is used to resolve property disputes when issues such as interpretation of an easement arise. <u>US v. Park</u>, 536 F. 3d 1058, 1061 (9th Cir. 2008). The issues raised in Tri-Dam's motion for summary judgment will first be discussed, and then the issues raised by Yick's motion for summary judgment will be considered.

### A. Tri-Dam's Arguments for Summary Judgment.

In Tri-Dam's second motion for summary judgment, Tri-Dam alleges that the adjudication of the property dispute between neighbors Yick and Larson does not collaterally estop Tri-Dam from enforcing its FERC license against Yick, Tri-Dam's permanent flowage easements give it the right to remove Yick's dock from the Project Boundary, and that Tri-Dam's earlier flowage easements are superior to Yick's implied easement.

#### 1. Tri-Dam's claim of a right to require removal of Yick's dock.

Tri-Dam contends it has the right to require Yick to remove his dock because the dock is below the 515 foot elevation contour of the Project Boundary, and is subject to the rules and

requirements of the SMP. Tri-Dam bases this right on two flowage easements it was granted prior to obtaining its first license. The easements, obtained in 1956 and 1957, grant Tri-Dam "Permanent easement rights. . . for the following uses and purposes:

> (a) The right to permanently overflow, flood, and cover said hereinafter designated land with the flood, slack, or backwater created by the construction and operation of the Tulloch Dam across the Stanislaus River;
> (b) The right to enter upon said land from time to time and clear, destroy, or dispose of any timber or other natural growth, and any obstructions, accumulations, trash, filth, and any other thing which would in any way interfere with the use of said reservoir, or the waters therein, or tend to render unsafe or unsanitary either the reservoir created by said Dam or the margin thereof;
> (c) The right to ingress and egress from said lands for the purposes of aforesaid."

See Exhibits A and B of Plaintiff's Request for Judicial Notice.

The extent of an easement "is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." Cal. Civ. Code, §806. With an express easement, as in this case, the only interests that are transferred from the grantor to the grantee are the interests expressed in the grant and those necessarily incident to the interests. Pasadena v. California-Michigan Land & Water Co., 17 Cal. 2d 576, 579 (1941). Pasadena further held that a servient tenement could make any use of the land so long as that use does not unreasonably interfere with the easement. Id. at 579. Certain uses of lands that are restricted by easements are deemed to be an unreasonable interference with the land, as a matter of law. See, e.g., Pacific Gas & Electric Co. v. Hacienda Mobile Home Park, 45 Cal. App. 3d 519, 528 (1st Dist. 1975). Otherwise, the question of whether a particular use of the land by a servient owner constitutes unreasonable interference is generally a question of fact to be decided by the jury. Pasadena, 17 Cal. 2d 576, 579.

In this case, Tri-Dam has failed to present any evidence to suggest its easements give it the far reaching right to require Yick to remove his dock. Tri-Dam asserts Yick's dock is "an obstruction . . . or any other thing which would in any way interfere with the use of said reservoir, or the water therein . . .." See Tri-Dam's second motion for summary judgment 12:2-3. While this may be true of Yick's dock, Tri-Dam has not presented evidence that Yick's dock is

an "obstruction" or that the dock interferes, let alone unreasonably interferes, with the use of the reservoir.

Under these circumstances, Tri-Dam's second motion for summary judgment must be denied.

### 2. Tri-Dam's claim that its flowage easements are superior to Yick's implied easement.

Tri-Dam further claims that when there are two competing easements, the prior easement must prevail. This rule, however, requires context. The court in Pasadena addressed the issue of competing easements to a five foot wide strip of land occupied by underground water pipes. The court held that when two concurrent easements exist, the rights of the parties holding the easements are not absolute, but must be construed to allow reasonable enjoyment of both interests so long as it is possible. Pasadena, 17 Cal. 2d 576, 583. The court held that where reasonable use of the prior easement calls for the space occupied by the second easement, the paramount right prevails only when the two easements can no longer exist in harmony. Id, at 582. Additionally, Pasadena relied on Murphy Chair Co. v. American Radiator Co., which held that easements on the same land could both be used simultaneously, but the subsequent grant is subordinate if it interferes with the reasonable use of the prior easement. Murphy Chair Co. v. American Radiator Co., 172 Mich. 14, 28 (1912).

Tri-Dam has presented evidence that its easements were recorded prior to the granting of Yick's easements, showing that its easement is first and Yick's is subsequent. Tri-Dam showed that the first flowage easement obtained from the Mitchell family was recorded on October 8, 1956 in Calaveras County, and that the second easement, obtained from Sanguinetti, was recorded on November 18, 1957 in Calaveras County. Yick showed that his easement was created on April 21, 2008, several decades after Tri-Dam's flowage easements had been recorded. If the two easements ever conflicted, Tri-Dam's easement rights would be paramount. However, Tri-Dam has not presented evidence that its easements require Yick's dock to be removed. Again, there is no evidence that Tri-Dam's reasonable use of its easement requires Yick to remove his dock or stop use of his easement. There is also no evidence that Yick's dock

unreasonably interferes with Tri-Dam's easements. Based on the forgoing, Tri-Dam's second motion for summary judgment cannot be granted.

**B. Yick's argument for summary judgment.**

The only triable issue alleged in Yick's second motion for summary judgment is the issue of collateral estoppel. Yick alleges that his prior lawsuit against Larson in 2008 bars Tri-Dam from litigating this case. Under the doctrine of collateral estoppel, when an issue or fact of law has been previously decided and that fact or issue was necessary to the judgment, the prior decision may prevent relitigation of the issue in a suit on a different cause of action involving a party to the first case. Allen v. McCurry, 449 U.S. 90, 94 (1980). "The elements of . . . collateral estoppel are the same in California and federal courts." Contasti v. City of Solana Beach, 2006 WL 4109207 (S.D. Cal. 2012).  In California, collateral estoppel requires proof of three elements. These elements include:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding.

Rodgers v. Sargent Controls & Aerospace, 136 Cal. App. 4th 82, 90 (1st Dist. 2006).

Yick argues that all issues regarding his dock and its protrusion over Lot 48 have already been decided in the state court case of Yick v. Larson. In that case, the court granted Yick an implied easement over Lot 48 and did not order removal of the entire dock, which Larson had sought. Yick now contends that this case is relitigating essentially the same issues. Tri-Dam, on the other hand, argues that the issue in the state action was to seek title or an easement over Lot 48, which is a property right, and asserts that this action is to enforce the SMP and its prior easements over Yick's land. Yick has not shown that the issues in the state claim and this claim are identical.

The Court agrees with Tri-Dam. Because the issues in the state action and this action are not identical, Yick's collateral estoppel argument must fail and his second motion for summary judgment must be denied.

## V. DISPOSITION

Based on the forgoing, the motion of plaintiff Tri-Dam for summary judgment is DENIED. The motion of defendant Yick for summary judgment is DENIED. The Court refers the case to the Magistrate Judge for a trial-setting conference.

IT IS SO ORDERED.

Dated:   June 7, 2013                             _____
                                                            SENIOR  DISTRICT  JUDGE