**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TRI-DAM,** | Case No. 1:11-CV-01301 AWI-SMS |
| **Plaintiff,** | **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT** |
| **v.** | |
| **RANDAL YICK,** | |
| **Defendant.** | |

## I.      Introduction

Plaintiff Tri-Dam ("Tri-Dam") brought suit against Defendant Randal Yick ("Yick") seeking a permanent injunction requiring Yick to remove his unauthorized dock on Tulloch Reservoir and prohibiting him from maintaining any development on the reservoir without a permit from Tri-Dam. Tri-Dam's Second Amended Complaint, Doc. 80 ("SAC"), contains five causes of action: (1) a stand-alone claim for Violation of the Federal Powers Act ("FPA"), Federal Energy Commission ("FERC") Regulations, and the Tri-Dam Shoreline Management Plan ("SMP"), (2) Private Nuisance, (3) Public Nuisance, (4) Trespass, and (5) Interference with Express Easement. SAC at 8-11. Plaintiff moved for partial summary judgment on claims two and three, specifically seeking that the Court determine that Defendant's dock constitutes nuisance per se, as well as common law public and private nuisance. For the following reasons the Court will grant Plaintiff's motion for partial summary judgment.

///

///

## II.     Background

The facts in this matter are largely undisputed. Tri-Dam is, and at all times material to this action was, a joint venture between the South San Joaquin Irrigation District and the Oakdale Irrigation District, which owns and operates the Tulloch Hydroelectric Project No. 2067 (the "Tri-Dam Project"), on the Tulloch Reservoir. *See* Declaration of Ron Berry, Doc. 100-3 ("Berry Decl.") at ¶ 3-4. The Tulloch Reservoir is man-made reservoir with multiple hydroelectric power general units adjacent to the dam located on the Stanislaus River, in Tuolumne and Calaveras Counties. Berry Decl. at ¶ 2. The Tri-Dam Project boundary (the "Project Boundary"), as defined by FERC, includes an area of about 1,638 acres, and generally includes all the land within the 515-foot elevation contour surrounding the Tulloch Reservoir. 2006 FERC License, Berry Decl. Exh C. at 38;[1] *See* Berry Decl. at ¶ 5. The majority of the land within the Project Boundary—about sixty-three percent—is privately owned. *Id*. Tri-Dam owns approximately twenty-five percent of the land and the state and federal governments own the remaining approximately twelve percent of the land. *Id.*

In 1956 and 1957, Tri-Dam obtained easements over the properties owned by the Mitchell and Sanguinetti families within the Project Boundary. Request for Judicial Notice ("RJN") at ¶¶ 1-2, Exs. A & B. In relevant part, those easements granted to Tri-Dam the ""right to enter upon said land from time to time and clear, destroy, or dispose of any timber or other natural growth, and any obstructions, accumulations, trash, filth and any other thing which would in any way interfere with the use of said reservoir, or the waters therein, or tend to render unsafe or unsanitary either the reservoir created by said Dam or the margin thereof." *Id*.

In 1991, Connor Estates Investors I, a development company, developed property abutting the Tulloch Reservoir. Declaration of Matthew Weber ("Weber Decl.") at ¶ 2, Ex. C. A Covenants, Conditions and Restrictions document ("CC&Rs") was recorded on May 8, 1992, providing notice to homeowners in the development that they could not install or maintain docks without Tri-Dam approval. RJN at ¶ 3, Ex. C at 46. In 1993, Yick purchased the property located within Calaveras County, Lot 49 of the Connor Estates subdivision, known as 6204 Bluff View

---

[1] Unless otherwise noted, page numbers refer to the page stamp applied by the Court's electronic filing system.

Road, Copperopolis, California 95228 ("Subject Property"). *See* Declaration of Randal Yick ("Yick Decl.") at ¶ 4.

On September 16, 2008, the Calaveras County Board of Supervisors passed Ordinance Number 2957, adding Sections 20.10.100 to 20.10.200 to the Calaveras County Municipal Code ("Calaveras Code"). RJN at ¶ 5, Ex. E, Doc. 100-7 at 99-103. Section 20.10.120 provides that "[a]ll facilities installed, constructed or maintained within the reservoir and FERC project boundary shall be in full compliance with appropriate permitting regulations of the county and Tri-Dam…. Any dock, building or structure set up, erected, built, moved or maintained or any use of property contrary to the provisions of this chapter is unlawful and constitutes a public nuisance." RJN, Ex. E at 101. That section made clear that any "dock or other facility installed prior to 1979" would be "considered 'grandfathered' into legal existence." *Id.*

### III.    Legal Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex,* 477 U.S. at p. 325).  If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both

material, i.e., it affects the outcome of the claim under the governing law, *see Anderson,* 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir.1987). In order to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at p. 587 (citation omitted).

A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).

## IV.    Discussion

Plaintiff presents three arguments that it asserts entitle it to the requested injunctive relief: (1) Defendant's dock is a nuisance per se because it violates the Calaveras Code, and even if it were not a nuisance per se, Defendant's dock is a common law (2) public nuisance and (3) private nuisance. Plaintiff seeks the same relief in each claim—abatement of the nuisance. Because the Court agrees that Defendant's dock is a nuisance per se based upon the Calaveras Code, the Court addresses only that issue.

**1. Nuisance Per Se**

"[A] nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity, or circumstance, to be a nuisance." *People ex rel. Trutanich v. Joseph,* 204 Cal.App.4th 1512, 1524 (Cal. Ct. App. 2012) (quoting *Beck Dev. Co. v. S. Pac. Transp. Co.,* 44 Cal.App.4th 1160, 1206, 52 Cal.Rptr.2d 518 (3d Dist. 1996)). "[T]o be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence

by some applicable law." *Beck Dev. Co.*, 44 Cal.App.4th at 1207. When a statute identifies an object, substances, activity or circumstance to be a nuisance the Court asks only (1) whether the statute has been violated and (2) whether the statute is constitutional. *Net Connection Hayward, LLC v. City of Hayward*, 2013 WL 3786635, *8 (N.D. Cal. July 18, 2013); *City of Bakersfield v. Miller*, 64 Cal.2d 93, 100 (1966) ("*Miller*"). If the answer to both questions is yes then no additional showing need be made in order to abate the nuisance. *Id.*; *City of Claremont v. Kruse*, 177 Cal.App.4th 1153, 1166 (Cal. Ct. App. 2009) (rejecting defendants' argument that the city needed to show that defendants' conduct caused "actual harm" because such a showing is not required to prove a nuisance per se); *accord People ex rel. Trutanich*, 204 Cal.App.4th at 1524 (holding that a public nuisance per say is appropriately abated upon a showing that the ordinance at issue violated); *City of Costa Mesa v. Soffer*, 11 Cal.App.4th 378, 382 (Cal. Ct. App. 1992).

California Government Code section 38771 provides, "By ordinance the city legislative body may declare what constitutes a nuisance." *See Miller*, 64 Cal.2d at 100 (Pursuant to section 38771 a city "has the power to define by statue the standards by which courts are to judge whether a nuisance exists….") Here, the Calaveras Municipal code requires that "[a]ll faculties … within … FERC project boundary … be in full compliance with appropriate permitting regulations of the county and Tri-Dam." Calaveras Code § 20.10.120(A). "Any dock, building or structure set up, erected, built, moved or maintained" without complying with those permitting requirements "is unlawful and constitutes a public nuisance." Calaveras Code § 20.10.120(D).

Yick recognizes that "(a) Tri-Dam has the right to permit docks on Lake Tulloch, (b) permits are required for docks, [and] (c) that the Calaveras Code defines an unpermitted [dock] as a public nuisance." Doc. 101 at 15. He concedes that he failed to obtain a permit from Tri-Dam to install or maintain his dock and notes that his conduct constitutes "a technical violation of the Calaveras Code." Doc. 101 at 15-16. By maintaining his dock, Yick is violating Calaveras Code section 20.10.120.

Yick does not contend that section 20.10.120 of the Calaveras Code suffers from any constitutional defect.

Yick's dock is a nuisance per se.

**2. Yick's Defenses**

Yick contends the Court should deny summary judgement on Tri-Dam's nuisance per se claims for two reasons: (1) Tri-Dam consented (or acquiesced) to Yick maintaining his dock and (2) Yick has adversely possessed the property against Tri-Dam. Neither is an effective defense.

First, Yick contends Plaintiff Tri-Dam consented to maintenance of his dock. Although consent may be a defense against a party that gave consent in a private nuisance action, *Beck Development Co. v. Southern Pac. Transp. Co.*, 44 Cal.App.4th 1160, 1215 (Cal. Ct. App. 1996), consent is not a defense to public nuisance. *Mangini v. Aerojet-General Corp.*, 230 Cal.App.3d 1125, 1139 (Cal. Ct. App. 1991); *see Emeryville Redevelopment Agency v. Eltex Inv. Corp*, 2004 WL 2359862, *6 (N.D. Cal. Oct. 19, 2004); *Friedman v. Pac. Outdoor Advert. Co.*, 74 Cal. App. 2d 946, 953 (1946) (holding that a consent defense is inapplicable where the nuisance arises from violation of a statute); *see also Rev 973 LLC v. Mouren-Laurens*, 2009 WL 1096278, *9 (C.D. Cal. Apr. 22, 2009) (holding that consent is only a defense when the nuisance to be abate is lawful). Here, the nuisance clearly arises from violation of the Calaveras Municipal Code. Consent does not operate as a defense.

Second, Yick argues that he has obtained a prescriptive easement that operates as a defense to Tri-Dam's nuisance per se claim. However, under the California Civil Code, "[n]o lapse of time can legalize a public nuisance, amounting to an actual obstruction of public right." Cal. Civ.Code § 3490. That section has consistently been read for the proposition that "a right to continue a public nuisance cannot be acquired by prescription." *People v. Gold Run Ditch & Mining Co.*, 66 Cal. 138, 152 (1884); *Smallpage v. Turlock Irr. Dist*, 26 Cal.App.2d 538, 542, (Cal. Ct. App. 1938); *City of Turlock v. Bristow*, 103 Cal.App. 750, 756 (Cal. Ct. App. 1930) (Any "[p]rescriptive rights to the use of water in an open irrigation ditch extending through the boundaries of a city must be enjoyed with due regard and subject to the superior regulatory rights of the municipality to protect its citizens against the maintenance of a public nuisance."); *see Wade v. Campbell*, 200 Cal.App.2d 53, 60-61 (Cal Ct. App. 1962). Assuming that Yick has otherwise obtained a prescriptive easement to maintain his dock, that right is subordinate to the Calaveras Code's requirement that he seek a permit from Tri-Dam. Yick's failure to comply with

the Calaveras Code is not cured by prescription.

**3. Permanent Injunction to Abate the Nuisance**

Normally, a party seeking injunctive relief in federal court must to show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013) (citations and quotation marks omitted). However, "[a] legislatively declared public nuisance constitutes a nuisance per se against which an injunction may issue without allegation or proof of irreparable injury." *Virtual Media Group, Inc. v. City of San Mateo*, 2002 WL 485044, *3 (N.D. Cal. Mar. 27, 2002), *aff'd by* 66 Fed.Appx. 129 (9th Cir. 2003). According to California law, all that a plaintiff alleging a nuisance per se must prove for an injunction to issue is that the property at issue was in violation of the statute or ordinance declaring the activity or condition to be a nuisance. *City of Monterey v. Carrnshimba*, 215 Cal.App.4th 1068, 1087-1088 (Cal. Ct. App. 2013); *see also City of Ridgrest v. Howard*, 2015 WL 1014322, *6 (Cal. Ct. App. Mar. 5, 2015) (unpub.). In similar fashion, district courts in this circuit have applied the California nuisance per se injunction standard, noting that, where a nuisance per se is established, the plaintiff "is entitled to injunctive relief without proof of irreparable harm and regardless of the availability of other remedies." *Lincoln Properties, Ltd. v. Higgins*, 1993 WL 217429, *25 (E.D. Cal. Jan. 21, 1993); *see The Fansler Foundation v. American Realty Investors, Inc.*, 2007 WL 1302742 (E.D. Cal. May 2, 2007) (applying California law to determine whether an injunction should issue on a state law claim); *Virtual Media Group, Inc.*, 2002 WL 485044 at *3. In fact, the *Lincoln Properties* court issued an abatement injunction without discussing any of the ordinary requirements for issuance of an injunction. *Id*. at *26.

That in mind, in the preliminary injunction context, at least one other district court has found "that federal, not state, standards govern issuance of a preliminary injunction when a federal court is … exercising supplemental jurisdiction over state law claims." *Anselmo v. Mull*, 2012 WL

1   5304799, *5 (E.D. Cal. Oct. 25, 2012); *see Kane v. Chobani, Inc*. 2013 WL 3776172, *3 (N.D.

2   Cal. July 15, 2013) ("[C]ourts in the Ninth Circuit have repeatedly applied the federal standard

3   when faced with requests for [preliminary] injunctive relief based on state causes of action.")

4   (citing, *inter alia*, *Kremen v. Cohen*, 2012 WL 44999, *5, *11-12 (N.D. Cal. Jan 7, 2012)). In

5   denying a preliminary injunction, the *Anselmo* court refused to apply the presumption of

6   irreparable injury that California courts apply in the nuisance per se context. *Anselmo*, 2012 WL

7   5304799 at *8. Instead, the court required the plaintiff to show (1) irreparable injury, (2) that the

8   balance of hardships tips in its favor, and (3) that an injunction is in the public interest. *Id*.

9        The reason for the application of federal law in the preliminary injunction context and

10   application of state law in the permanent injunction context becomes clear upon consideration of

11   the *Erie* doctrine. Under the *Erie* doctrine, a federal court exercising supplemental jurisdiction

12   applies state substantive law and federal procedural law. *Erie R.R. Co v. Tompkins*, 304 U.S. 64

13   (1938); s*ee Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (holding that

14   *Erie* extends to cases heard under supplemental jurisdiction). Although "[c]lassification of a law as

15   'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor, *Gasperini v.*

16   *Center for Humanities, Inc.*, 518 U.S. 415, 426 (1996), an issue is generally classified as

17   procedural if it is "concerned with judicial administration, such as the methods of presenting facts

18   to a court or the way a jury operates," *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 645 (9th Cir.

19   1998). On the other hand, an issue is generally classified as substantive for purposes of *Erie* if it is

20   "concerned with the legal rights of the parties." *Sims*, 863 F.2d at 645. Alternatively, the high

21   court has framed the inquiry as whether a rule is "outcome determinative"; in other words, if

22   application of a federal rule would "significantly affect the result of a litigation" then the rule is

23   substantive. *Gasperini,* 518 U.S. at 427 (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109

24   (1945)). This test is not applied in a vacuum, "it is guided by 'the twin aims of the *Erie* rule:

25   discouragement of forum-shopping and avoidance of inequitable administration of the laws.'"

26   *Cuprite Mine Parterns LLC v. Anderson*, 809 F.3d 548, 555 (9th Cir. 2015) (quoting *Gasperini*,

27   518 U.S. at 428); *see Hanna v. Plumer*, 380 U.S. 460, 467 (1965) (The *Erie* rule is rooted in a

28   recognition that "it would be unfair for the … result of a litigation materially to differ because suit

had been brought in federal court."); *Guarantee Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945) (The choice of law should insure "substantial uniformity of predictable outcomes between cases tried in federal court and cases tried in the courts of the state in which the federal court sits.")

"The purpose of a preliminary injunction is to preserve the status quo pending a resolution on the merits." *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012). A permanent injunction serves a distinct function; "[a] permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action … against a defendant and that equitable relief is appropriate." *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 2013 WL 890126, *3 (N.D. Cal. 2013) (citation and internal quotation marks omitted). A preliminary injunction's preservation of the status quo cannot be outcome determinative because the party seeking the preliminary injunction "will still have the opportunity to seek a permanent injunction after trial on the merits." *Kane*, 2013 WL 3776172 at *3. Conversely, federal law regarding issuance of a permanent injunction requires the court to go beyond the circumscribed nuisance per se abatement inquiry set by state law. As such, application of federal law in determining whether to issue a permanent injunction in this instance might significantly impact the result of the litigation.

The Ninth Circuit addressed a similar issue in *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 645 (9th Cir. 1998), whether a California anti-injunction statue was procedural or substantive law for purposes of *Erie*.

> The statute [in *Sims*], California Civil Code section 3423, bars an injunction to prevent the breach of a personal service contract, unless the contract guarantees annual payments of at least $6,000. The district court found that, even if section 3423 were applicable, Federal Rule of Civil Procedure 65 allowed the grant of temporary injunctive relief. *Id*. at 646. The Ninth Circuit reversed. The court found that Rule 65 and section 3423 did not conflict because the former "merely sets out the procedural requirements for injunctions and restraining orders," while the latter "expressly prohibits the issuance of injunctions in this type of contract dispute." *Id*. The court then held that because of lack of conflict, Erie "require[d] the application of state law over federal law if the state law is outcome-determinative." *Id*. The Court concluded that section 3423 was outcome-determinative because an injunction would accomplish what California law prohibited, and that California policy should be respected by federal courts sitting in diversity. *Id*. at 647.

*Winans by and through Moulton v. Emeritus Corp.*, 2014 WL 970177, *5 (N.D. Cal. Mar. 5,

2014). *Sims* stands for the proposition that the availability of a remedy is substantive law; where state law prohibits a remedy and federal law allows it, application of federal law would significantly affect the result of the litigation. *Sims*, 863 F.2d at 645-646; *see United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.,* 2012 WL 3861946, at *4 (S.D. Cal. Sept. 5, 2012) ("[T]he availability of injunctive relief is a substantive issue and is therefore governed by state law.") Although this action is not on all fours with *Sims*, there is a stark parallel. Applying the federal requirements for issuance of an injunction would require proof beyond that required by California for issuance of the same injunction in state court. Applying federal law would not foreclose injunction as a remedy but it would significantly increase the proof necessary and would require this Court to ignore Calaveras County's legislative determination that the conduct at issue causes irreparable harm.

For those reasons, the Court concludes that nuisance per se abatement rules are substantive law and applies California substantive law regarding issuance of abatement injunctions upon proof of nuisance per se. Because Tri-Dam has proven that Yick's dock violates Calaveras Code section 20.10.120, and there is no challenge to the constitutionality of section 20.10.120, an abatement injunction will issue. *See Net Connection Hayward, LLC v. City of Hayward*, 2013 WL 3786635 at *8; *Miller*, 64 Cal.2d at 100; *People ex rel. Trutanich*, 204 Cal.App.4th at 1524.

In crafting the scope of the abatement injunction, the Court is careful to minimize the hardship on Yick. Abatement of the nuisance can be achieved by Yick obtaining a permit for placement of his dock. According to the parties, Yick's dock cannot be permitted as it presently exists because it extends outside of his property line in violation of the SMP. Yick will be afforded the opportunity to remedy his violation of the SMP and apply for an encroachment permit from Tri-Dam within 21 days of the date of this order.

In sum, Yick's dock may be maintained only if Tri-Dam approves a permit application submitted as set forth above. Otherwise, Yick's dock must be removed no later than (1) 15 days after the date of denial of his permit application, or (2) if no application is submitted within 21 days, 30 days after issuance of this order.

///

### V.   Order

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment against Randal Yick is GRANTED as follows: Yick's may maintain his dock on the Tulloch Reservoir only if Tri-Dam approves a permit application submitted as set forth above. Otherwise, Yick's dock must be removed no later than the later of (1) 15 days after the date of denial of his permit application, or (2) if no application is submitted within 21 days, 30 days after issuance of this order.

In light of the relief granted, it is unclear to the Court how Tri-Dam might like to proceed. Tri-Dam must file a notice of settlement, voluntary dismissal, or status update on or before September 12, 2016. If Tri-Dam wishes to proceed in this matter, the Court will set a scheduling conference before the magistrate judge.

IT IS SO ORDERED.

Dated:   July 28, 2016                         _____

                                      SENIOR  DISTRICT  JUDGE